17695

Isiah PORTER, Respondent, v. NEWS AND COURIER COMPANY, Appellant

(115 S. E. (2d) 656)

*Messrs. Waring & Brockinton,* of Charleston, *for `Appellant,*

*Messrs. Wrighten & Brown,* of Charleston, *for Respondent,*

*Messrs. Waring & Brockinton,* of Charleston, *for Appellant, in reply,*

August 8, 1960.

STUKES, Chief Justice.

This is an appeal from a *pro forma* order overruling defendant's demurrer to the complaint which is for damages for alleged libel of the plaintiff. It is alleged in the complaint that the following allegedly false matter was published by appellant in its newspaper: Under the replica of a check there was: "A Charleston Man Cashed This Check for $6.47 * * * But He Ended Up With $149.63 Decimal In Check number (left) apparently caused cashier to make mistake."

Then followed the headlines:

"Misplaced Decimal Point

"Father Of Twelve Freed After Receiving Too Much Money For A Payroll Check."

Then the article, as follows:

"By Glenn Robertson

"News and Courier Staff Writer

"What's in a payroll check number?

"Plenty, so far as Isiah Porter is concerned.

"Check number 14963, given him by the Woodstock Manufacturing Co. in the Stark Industrial area Sept. 24, 1958, could have been responsible for Isiah's spending 10 years in jail. All because of a misplaced decimal point.

"But he was freed yesterday to go back to work—and to go back to his wife and 12 children.

"When the all-white jury returned their 'not guilty' verdict yesterday afternoon at 3:50, spectators in the court room applauded.

"Isiah's smile of freedom climaxed a legal battle that had begun yesterday morning in General Sessions Court.

"What apparently happened was this:

"Isiah went into Piggly Wiggly grocery store at Dupont Crossing in St. Andrew's Parish last September to cash a payroll check for $6.47.

"The saleslady who cashed the check had been working for the grocery chain for only three weeks.

"She glanced at the check number, 149.63 (the decimal had been put in by the check writing machine), and quickly counted out $149.63 in Isiah's hand. Apparently she read the check number as the amount involved.

"Isiah Walked Out Of The Store And During The Following Week Spent $60.00 Of The Money.

"Did Isiah commit larceny in taking the money?

"Isiah's attorneys said no. The state said yes.

"So convinced of his innocence was Isiah's attorney that he asked for a directed verdict of not guilty after the state had presented their case against the 42-year-old Negro. The

motion was denied by presiding Judge Steve C. Griffith of Newberry.

"The break in the trial came, however, when Judge Griffith charged the jury before they retired.

"He said:

" 'Money in this case was not taken—but it was delivered. Therefore the state must have proved that he acquired the property wrongfully. The taking offense must exist at the very time it comes into his possession.

" 'The state must further have proved that he took the money—and at the time of the taking, the defendant knew it was wrong and that he intended to steal it.' "

"If found guilty, Judge Griffith continued, the defendant would be required to serve from three months to ten years at hard labor.

"The jury went out at 3:17 p. m., and delivered the 'not guilty' verdict 38 minutes later.

"What's going to happen to Isiah now?

"His employer, Thomas J. Thorne, general manager of Woodstock says he can come back to work.

" 'He's been drawing about a $100.00 a month unemployment compensation since October.' Thorne said, 'and he was laid off with the understanding that if he was cleared, he could come back to work.' "

"And how about the check-writing machine that makes numbers look like dollars and cents, he was further asked?

" 'Oh, we replaced it sometime ago,' Thorne concluded."

The contentions of appellant are, as stated in the brief, that the demurrer should have been sustained because the complaint failed to state facts sufficient to constitute a cause of action, in that (1) the publication of the matter allegedly libelous was privileged and there were no allegations of specific malice, and (2) the alleged libelous matter is not libelous *per se* and there were no extrinsic facts alleged from which it could be concluded that the plaintiff had been degraded or had suffered loss by reason of the publication.

With respect to (1) above, privilege is a matter of defense and ordinarily not available on demurrer. *Rivers v. Florence Printing Co.,* 141 S. C. 364, 139 S. E. 781; *Kirby v. Gulf Refining Co.,* 173 S. C. 224, 175 S. E. 535; *Moore v. New South Express Lines, Inc.,* 184 S. C. 266, 192 S. E. 261; *Rutledge v. Junior Order United American Mechanics,* 185 S. C. 142, 193 S. E. 434; *Bell v. Bank of Abbeville,* 208 S. C. 490, 38 S. E. (2d) 641; *Drakeford v. Dixie Home Stores,* 233 S. C. 519, 105 S. E. (2d) 711. Annotation, 51 A. L. R. (2d) 552.

Appellant cites two cases in which demurrers were sustained to complaints for libel by newspaper publications of judicial proceedings, on the ground of privilege. The first is *Oliveros v. Henderson,* 116 S. C. 77, 106 S. E. 855, and the other is *Lybrand v. State Company,* 179 S. C. 208, 184 S. E. 580, 104 A. L. R. 1118. However, in neither case was it considered whether privilege is an affirmative defense and has to be pleaded, whereby it is not available on demurrer. On the contrary, in the *Lybrand case* the absence of privilege was alleged in the complaint. See the decisions cited in 51 A. L. R. (2d) 569(b). Neither case is authority against the rule that privilege is an affirmative defense. Incidentally, in the *Oliveros case* it was clearly and repeatedly said that the newspaper or other report of a judicial proceeding, if containing libel, must be an accurate, fair and impartial report of the proceeding, not garbled, added to or taken from and, further, that quoting, "No one has a right to take advantage of the privilege, allowed to make comments injurious to the reputation or business of another." [116 S. C. 77, 106 S. E. 869.]

Turning to appellant's point (2) above, we find it to be equally without merit. Putting aside the claim of privilege, as we must in the consideration of the demurrer, we think that the alleged publication reasonably may be understood to charge the respondent with the crime of larceny or of breach of trust with fraudulent intent, either of which is libelous *per se. Smith v. Brown,* 97 S. C. 239, 81

S. E. 633; *Williamson v. Askin & Marine Co.,* 138 S. C. 47, 136 S. E. 21; *Duncan v. Record Publishing Co.,* 145 S. C. 196, 143 S. E. 31; *Turner v. Montgomery Ward & Co.,* 165 S. C. 253, 163 S. E. 796; *Merritt v. Great A. & P. Tea Co.,* 179 S. C. 474, 184 S. E. 145; *White v. Southern Oil Stores,* 198 S. C. 173, 17 S. E. (2d) 150; *Rogers v. Florence Printing Co.,* 230 S. C. 304, 95 S. E. (2d) 616; *Drakeford v. Dixie Home Stores, supra,* 233 S. C. 519, 105 S. E. (2d) 711. See particularly, *Williamson v. Askin & Marine Co., supra.*

It is well settled that a crime need not be charged *eo nomine* for the words to be actionable. *Lily v. Belk's Department Store,* 178 S. C. 278, 182 S. E. 889; *Flowers v. Price,* 192 S. C. 373, 6 S. E. (2d) 750. In several former decisions we have cited with approval the following from Odgers on Libel and Slander (1st Am. Ed.) 116; "It is not necessary that the defendant should in so many words, expressly state the plaintiff has committed a particular crime. * * * Any words which distinctly assume or imply the plaintiff's guilt, or raise a strong suspicion of it in the minds of the hearers, are sufficient."

The order under appeal will be affirmed and appellant may serve its answer to the complaint within twenty days after remittitur is filed in the lower court.

Affirmed.

TAYLOR, OXNER, LEGGE and Moss, JJ., concur.