### TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Appellant,

v.

### UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, et al., Appellees.

No. 99–CV–507.

District of Columbia Court of Appeals.

Argued April 12, 2000.
Decided April 12, 2001.

Dale E. Hausman, with whom N. Christopher Hardee was on the brief, Washington, DC, for appellant.

R. Edward Poole, with whom Jerold Oshinsky and Sallie H. Helm were on the brief, Washington, DC, for appellee.

Before WAGNER, Chief Judge, RUIZ, Associate Judge, and BELSON, Senior Judge.

RUIZ, Associate Judge:

This case concerns an insurance company's duty to defend under provisions of several comprehensive general liability insurance policies. Appellee, United Food & Commercial Worker's International Union ("UFCW"), brought this insurance coverage action against appellant, Travelers Indemnity Company of Illinois ("Travelers"), seeking a declaration that Travelers is obligated to defend (and, potentially, to indemnify) the UFCW in two lawsuits filed against the union by Food Lion, Inc. ("Food Lion") which claim that the union for improper purposes encouraged an employee's suit against Food Lion that made false claims against the company.[1] UFCW alleged that Travelers breached its contractual duties under the insurance policy by refusing to defend the union or to pay its defense costs in those lawsuits, and had violated the implied covenants of good faith and fair dealing in connection with its handling of UFCW's claims for coverage. Travelers defended on the grounds that the Food Lion lawsuits did not come within the insurance policy's coverage and, even if they were covered, UFCW had failed to give Travelers timely notice of Food Lion's claims or tender the defense of the lawsuits.

The trial court considered cross-motions for partial summary judgment regarding Travelers' duty to defend UFCW in the first suit (the "1993 Food Lion suit"), and ruled in favor of the UFCW against Travelers.[2] The trial court found that a pleaded theory of recovery in the lawsuit, "abuse of process," was sufficiently similar to "malicious prosecution," an "offense" covered by the Travelers' policies, so as to trigger the insurance company's duty to defend. Because it found that Travelers had a duty to defend under the "malicious prosecution" provision, the trial court did not address the separate claim

---

1. Food Lion filed suit against UFCW in 1993 and 1995. Although UFCW's complaint makes claims regarding Travelers' duty to provide a defense and indemnify UFCW in both cases, only Travelers' duties regarding the 1993 action are the subject of this appeal.

2. UFCW had also sued and moved for partial summary judgment against co-defendant Uli-

co Casualty Company on that insurance company's duty to defend UFCW in the 1993 *Food Lion* suit. The trial court held that UFCW's contract with Ulico was intended as excess insurance, applicable only once the coverage from UFCW's primary insurer was exhausted. UFCW and Ulico subsequently resolved their dispute and Ulico was dismissed from the case pursuant to a settlement agreement.

that Travelers had a duty to defend the UFCW under the "libel, slander, and disparagement" provision of the policy. The trial court rejected, as waived, Travelers' defense that UFCW had failed to give timely notice of its claim. The trial court denied Travelers' motion to alter or amend the judgment, and certified its decision as final pursuant to Super. Ct. Civ. R. 54(b).[3] We affirm in part and reverse in part; we affirm the trial court's finding that the allegations in the complaint of the 1993 Food Lion suit state a cause of action within the coverage of the policy, albeit on the alternative ground that the complaint states a claim cognizable under the "libel, slander, and disparagement" provision;[4] we reverse the trial court's grant of summary judgment as premature because Travelers had not waived its affirmative defense of defective notice and should have been permitted limited discovery to establish that defense prior to consideration of summary judgment.

### I. Statement of Facts

### A. The Contracts

Travelers issued several primary and umbrella comprehensive general insurance contracts to the UFCW. The primary contracts provide that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies." The contracts further provide that Travelers "will have the right and duty to defend any 'suit' seeking those damages." The contracts define "personal injury" as:

injury, other than 'bodily injury,' arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, or

e. Oral or written publication of material that violates a person's right of privacy.

The insurance contract requires that Travelers "receive prompt written notice of [a] claim or 'suit,' "and that the UFCW "immediately send [Travelers] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' "

### B. The Underlying Case

In February 1993, Food Lion sued UFCW in South Carolina state court for abuse of process,[5] alleging that UFCW secretly supported and encouraged a lawsuit brought against Food Lion by a former employee named Rickey Bryant.[6]

---

**3.** Super. Ct. Civ. R. 54(b) allows the trial court, in cases involving multiple claims or parties, to "direct the entry of a final judgment as to 1 or more but fewer than all of the claims or parties . . . upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." UFCW's claims for indemnification in the 1993 Food Lion suit, as well as for defense and indemnification in the 1995 suit, are still pending.

**4.** We may affirm summary judgment for reasons different from those relied upon by the trial court if they are apparent from the record and were pleaded by the parties. *See Greycoat Hanover F St. Ltd. Partnership v. Liberty Mut. Ins. Co.,* 657 A.2d 764, 767 (D.C. 1995).

**5.** The lawsuit was removed to a federal district court in South Carolina.

**6.** The plaintiff in *Bryant v. Food Lion, Inc.,* 100 F.Supp.2d 346 (D.S.C.2000), claimed, *inter alia,* that Food Lion engaged in a company-wide scheme to discharge employees be-

Food Lion alleged that UFCW controlled the *Bryant* case "for the ulterior purpose of inflicting economic harm on [Food Lion] to erode [Food Lion's] business as much as possible, divert management attention, create doubt about management's *bona fides*, and ultimately destroy the reputation of [Food Lion]." Food Lion further alleged that the allegations in the *Bryant* litigation were "non-privileged" and "demonstrably false," and that UFCW engaged in various "willful acts in its use of the process, not proper to the regular conduct of the proceedings," including "[u]tilizing discovery . . . as a pretext to develop evidence and other information for collateral purposes," thus causing Food Lion "to expend grossly disproportionate amounts of time and resources relative to [the] damages claimed."

## C. Tender of Defense

On February 17, 1993, UFCW notified its insurance broker of the Food Lion action, enclosing a copy of the complaint. One week later, Travelers received a letter from the broker enclosing UFCW's February 17 letter and the Food Lion complaint. Travelers subsequently acknowledged that it had received the complaint in a letter which notified UFCW that it was researching the issue of coverage and would, after completing its research and analysis, thereafter advise the union of its views concerning its defense and indemnity obligations. In the meantime, the letter advised, UFCW was to do whatever was necessary to protect its interests in the litigation; UFCW had already hired local counsel to do so. In August 1993, UFCW's local counsel, David Flowers, informed Travelers that the United States District Court for the District of South Carolina had dismissed Food Lion's lawsuit, but that Food Lion had moved for reconsideration and leave to amend its

complaint, enclosing copies of Food Lion's motion to reconsider and proposed amended complaint. The affidavit of Lionel Martin, who supervised liability claims for Travelers, states that "[s]ometime after" Travelers received the notice of the complaint's dismissal from Flowers, Martin spoke with Richard Roesel, an assistant general counsel at UFCW, who told Martin that "the Food Lion litigation was concluded and that Travelers did not need to do anything more with respect to the Food Lion litigation." In January 1994, Travelers received a bill from Flowers requesting payment for services performed through December 1993.

## D. The Trial Court Decision

UFCW filed a motion for partial summary judgment seeking a determination that Travelers breached its duty to defend the 1993 Food Lion suit. UFCW argued 1) that Travelers waived its coverage defenses, and 2) that Travelers should afford UFCW a defense under the contract provisions relating to libel, slander and disparagement, or malicious prosecution. In response, Travelers argued that Food Lion's claim was not within the scope of UFCW's coverage because the 1993 Food Lion lawsuit alleged abuse of process, not "malicious prosecution," and did not assert a claim for libel, slander or disparagement. Accordingly, Travelers requested that summary judgment be entered in its favor. Alternatively, Travelers argued that summary judgment could not be granted to UFCW because disputed facts existed regarding whether UFCW tendered the defense of the 1993 Food Lion action or provided timely notice to Travelers. Travelers also argued that partial summary judgment was inappropriate because it had not completed discovery on its defenses.

fore their rights vested in Food Lion's profit sharing plan. *See id.* at 349.

The trial court granted partial summary judgment to UFCW. The trial court reasoned that "Travelers' only cognizable defense ... is that 'abuse of process' (the claim asserted in the Food Lion suit) and 'malicious prosecution' (the provision in the policy) are sufficiently different that the policy does not reach it." The trial court noted that the "only difference" between the elements of abuse of process and malicious prosecution is that the latter requires an existing judgment, but that "[t]hey are the same in all other respects." Based on the "[e]xtreme deference ... given to the insured in the construction of policies," the trial court held that the "difference between the causes of action ... cannot save Travelers from its duty to defend." Because it found a duty to defend under the "malicious prosecution" provision of the insurance policy, the trial court did not reach UFCW's alternative argument that a duty to defend could also be found under the libel, slander and disparagement provision of the policy. The trial court deemed the other issues raised by the parties to be "moot, irrelevant, or not meritorious such that they do not warrant discussion." Travelers moved to alter or amend the court's judgment, arguing that the trial court should vacate its grant of judgment in favor of UFCW and order additional discovery to be taken regarding the issue of timely notice. In denying Travelers' motion, the trial court clarified its prior order. The court reasoned that to accept Travelers' argument would "eviscerate the duty to defend" because Travelers sought discovery on "the very alleged acts of abuse of process that form the basis of the 1993 Food Lion suit," thereby forcing UFCW "to twice defend itself on the underlying claims before ever securing the relief it purchased under the policy." The trial court also considered that Travelers had waived the matter of timely notice of the 1993 Food Lion suit, noting that Travelers did not indicate a defect in notice prior to the filing of the instant suit, though it had four years to do so. The trial court granted Travelers' request that the court certify its decision as final for purposes of appeal. Travelers timely noticed this appeal.

## II. Standard of Review

 "On appeal from the trial court's entry of summary judgment, this court conducts a *de novo* review of the record and applies the same principles employed by the trial court in initially considering the motion." *Associates Fin. Servs. of Am., Inc. v. District of Columbia,* 689 A.2d 1217, 1220 (D.C.1997).[7] Summary judgment is proper under Superior Court Civil Rule 56 where the record shows that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See Big Builders, Inc. v. Israel,* 709 A.2d 74, 76 (D.C.1998). The court must view the record and draw all reasonable inferences in the light most favorable to the appellant, and a motion for summary judgment should be denied unless the moving party can show that no reasonable juror could find for the non-moving party. *See Galloway v. Safeway Stores, Inc.,* 632 A.2d 736, 738 (D.C.1993).

 "[W]here [insurance] contract language is not ambiguous, summary judgment is appropriate because 'a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence.'" *Byrd v. Allstate Ins. Co.,* 622 A.2d 691, 693 (D.C. 1993) (quoting *Holland v. Hannan,* 456

7. As a timely motion under Superior Court Civil Rule 59(e), Travelers' motion to alter or amend judgment tolled the time for filing an appeal and is reviewed on the merits. *See Fleming v. District of Columbia,* 633 A.2d 846, 848 (D.C.1993).

A.2d 807, 815 (D.C.1983)). An insurance contract is not "ambiguous merely because the parties do not agree on the interpretation of the contract provision in question." *Id.* at 694 (citation omitted). Whether an insurance contract is ambiguous is a question of law which this court reviews *de novo. See Sacks v. Rothberg,* 569 A.2d 150, 154 (D.C.1990).

### III. Construction of Insurance Contracts

■■■ "An insurance policy is a contract between the insured and the insurer, and in construing it we must first look to the language of the contract." *Cameron v. USAA Prop. & Cas. Ins. Co.,* 733 A.2d 965, 968 (D.C.1999).[8] "Where insurance contract language is not ambiguous ... a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *In re Corriea,* 719 A.2d 1234, 1239 (D.C.1998) (alterations and quotations omitted). "[U]nless it is obvious that the terms used in an insurance contract are intended to be used in a technical connotation, we must construe them consistently with the meaning which common speech imports." *Id.* (quotations omitted); *see also Cameron,* 733 A.2d at 968; *Washington v. State Farm Fire & Cas. Co.,* 629 A.2d 24, 27 n. 6 (D.C.1993). "[I]t is the insurer's duty to spell out in plainest terms—terms understandable to the man in the street—any exclusionary or delimiting policy provisions." *Cameron,* 733 A.2d at 968 (alterations and quotations omitted) (quoting *Holt v. George Washington Life Ins. Co.,* 123 A.2d 619, 621 (D.C.1956)). "Failing such unambiguous language, doubt should be resolved in favor of the insured." *Id.* (quotation omitted).

Since insurance contracts are written exclusively by insurers, courts generally interpret any ambiguous provisions in a manner consistent with the reasonable expectations of the purchaser of the policy. However, when such contracts are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy.

*Id.* at 968–69 (quoting *Smalls v. State Farm Mut. Auto. Ins. Co.,* 678 A.2d 32, 35 (D.C.1996). Thus, the "first step in the construction of contracts is to determine 'what a reasonable person in the position of the parties would have thought the disputed language meant.'" *Id.* at 970 (quoting *District of Columbia v. C.J. Langenfelder & Son, Inc.,* 558 A.2d 1155, 1159 (D.C.1989)).

■■■ In *S. Freedman & Sons, Inc., v. Hartford Fire Ins. Co.,* 396 A.2d 195 (D.C.1978), we reiterated the general rule governing the duty of an insurance company to defend as follows:

> The obligation of the insurance company to defend an action against an insured, as distinguished from its obligation to pay a judgment in that action, by the overwhelming weight of authority is to be determined by the allegations of the complaint.... If the allegations of the complaint state a cause of action within the coverage of the policy the insurance company must defend. On the other hand, if the complaint alleges a liability not within the coverage of the policy, the insurance company is not required to defend. In case of doubt such doubt ought to be resolved in the insured's favor.

*Id.* at 197 (quoting *Boyle v. National Casualty Co.,* 84 A.2d 614, 615–16 (D.C.

8. The insurance policy does not contain a forum or choice of law clause. As both parties have cited District of Columbia law in their submissions to the trial court and on appeal, and as neither party has suggested otherwise, we assume that District of Columbia law applies to the interpretation of the policy.

1951)). "[T]he duty to defend depends only upon the facts as alleged to be," so that the "[insurer's] obligations should be measured by comparing the policy it issued with the complaint filed [in the underlying case]." *Id.* at 197; *see also Western Exterminating Co. v. Hartford Accident & Indem. Co.*, 479 A.2d 872, 874 (D.C.1984). "In interpreting the allegations of the complaint, which are neither drafted by the insured nor advanced in contemplation of an insurer's role, excessively literal or rigid construction is to be avoided." *Eaton v. D'Amato*, 581 F.Supp. 743, 750 (D.D.C.1980). Therefore, we "examine the complaint for all plausible claims encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage and give fair notice to the insurer that the insured is being sued upon an occurrence which gives rise to a duty to defend under the terms of the policy." *American Cont'l Ins. Co. v. Pooya*, 666 A.2d 1193, 1197 (D.C.1995). The obligation to defend "is not affected by facts ascertained before suit or developed in the process of litigation or by the ultimate outcome of the suit." *Boyle*, 84 A.2d at 615.

### IV. Travelers' Duty to Defend

In its argument that the insurance policy's coverage of malicious prosecution actions does not extend to Food Lion's abuse of process claim against the UFCW, Travelers relies on the language in *Freedman* that "[w]hen the contract speaks of the following offenses ... false arrest ... or malicious prosecution, it will be presumed that, absent language to the contrary, the parties intended those words to be construed in accordance with established rules of law." 396 A.2d at 198 (quotations omitted).

Although Travelers concedes that *Freedman* is not dispositive of the question, it argues that, consistent with *Freedman*, this court should apply the term "malicious prosecution" as it is generally known as a legal term of art: the tort of malicious prosecution. We do not think *Freedman* compels the interpretation Travelers urges. In *Freedman*, the court was not concerned with the proper interpretation of insurance contract language, but with whether a specified offense took place during the insurance contract term; the language relied on by Travelers comes in a discussion of how to determine the date of an offense for coverage purposes. *Freedman* also states that "[w]e must read the policy's terms for the meaning they would carry in ordinary language," *id.* at 199, a rule of construction arguably inconsistent with that urged by Travelers.

■ Travelers argues that the tort of malicious prosecution is both broader and substantively different than the tort of abuse of process,[9] and cites a number of

---

9. Although both parties apparently assume that the law of the District of Columbia applies, we look to the law of the District of Columbia only to interpret the insurance contract between Travelers and UFCW, but, because the Food Lion litigation was filed in South Carolina, we look to South Carolina law to interpret the allegations of the complaint and the substantive law on which the allegations are based to determine coverage.

Under South Carolina law, the elements of malicious prosecution are 1) institution or continuation of original judicial proceedings, either civil or criminal by, or at the instance

of, the defendants; 2) termination of such proceedings in plaintiff's favor; 3) malice in instituting the proceedings; 4) lack of probable cause; and 5) resulting injury or damage. *See Jordan v. Deese*, 317 S.C. 260, 452 S.E.2d 838, 839 (1995). "The essential elements of abuse of process are an ulterior purpose and a willful act in the use of the process not proper in the conduct of the proceeding." *Hainer v. Am. Med. Int'l, Inc.*, 328 S.C. 128, 492 S.E.2d 103, 107 (1997) (citing *Huggins v. Winn–Dixie*, 249 S.C. 206, 153 S.E.2d 693, 694 (1967).

cases from other jurisdictions rejecting coverage under similar contracts based on the reasoning that the common law torts of malicious prosecution and abuse of process are separate and distinct torts."[10] On the other hand, UFCW cites other cases for the proposition that, consistent with the interpretive guidelines that terms in an insurance policy should be given their ordinary meaning, the common understanding of "malicious prosecution" generally refers to litigation conducted for a malevolent or ulterior purpose and is not limited to the common-law tort of that name.[11] We need not decide the interpretive question whether the term "malicious prosecution," as used in the insurance contract between two sophisticated business entities such as Travelers and UFCW, contemplates a technical or ordinary understanding, because we affirm the trial court's finding that the complaint's allegations against UFCW state a cause of action within the coverage of its policy with Travelers under a different provision of the insurance contract. See Greycoat, supra note 4, at 767 (appellate court may affirm on alternative ground).

Before the trial court and on appeal UFCW argued that Food Lion's 1993 amended complaint triggered Travelers' duty to defend under the "personal inju-ry" provisions providing coverage against suits seeking damages "arising out of . . . [o]ral or written publication of material that slanders or Vlibels a person or organization or disparages a person's or organization's goods, products or services." Because the trial court ruled that Travelers must defend under the "malicious prosecution" provision, it did not reach the question of coverage under the defamation provision, which was presented to and considered by the court as an alternative argument.[12] Under District of Columbia law the duty to defend arises "if the allegations of the complaint state a cause of action within the coverage of the policy." *Western Exterminating Co. v. Hartford Accident & Indem. Co.*, 479 A.2d 872, 874 (D.C.1984 (quoting *Freedman*, 396 A.2d at 197). We conclude that even if the terms "libel" and "slander" as used in the policy are understood in their most technical meaning, as types of actionable defamation, rather than as looser ordinary speech may contemplate, Food Lion's complaint adequately pleads a cause of action for defamation (libel) under South Carolina law. See *supra* note 9.

Under South Carolina law, "[d]efamatory communications take two forms: libel and slander. Slander is a spoken defama-

---

**10.** See *Heil Co. v. Hartford Accident and Indem. Co.*, 937 F.Supp. 1355, 1362 (E.D.Wis. 1996) (rejecting argument that "allegation of abuse of process is synonymous with malicious prosecution"); *Parker Supply Co., Inc. v. Travelers Indem. Co.*, 588 F.2d 180, 182–83 (5th Cir.1979) (holding abuse of process claim was not covered by malicious prosecution provision of insurance policy); *R.A. Hanson Co., Inc. v. Aetna Ins. Co.*, 26 Wash.App. 290, 612 P.2d 456, 459 (1980) ("Insurance against malicious prosecution does not cover abuse of process.").

**11.** See *Lunsford v. American Guar. & Liab. Ins. Co.*, 18 F.3d 653, 655 (9th Cir.1994) (distinction between malicious prosecution and abuse of process is "less than clear");

*Koehring Co. v. Am. Mut. Liab. Ins. Co.*, 564 F.Supp. 303, 311 (E.D.Wis.1983) ("distinction between malicious prosecution and abuse of process is at best unclear").

**12.** The trial court's decision apparently assumes that so long as one claim in the Food Lion complaint is covered, Travelers must provide a complete defense to UFCW. The parties have not addressed on appeal the scope of an insurer's duty to defend when only some of the claims are covered by the insurance policy, or after they have been resolved. *See generally* 14 COUCH ON INSURANCE § 200:26 (1999). We therefore decide the appeal on the same assumption that underlies the trial judge's order, but without examining its validity.

tion while libel is a written defamation or one accomplished by actions or conduct." *Fleming v. Caulder*, 338 S.C. 524, 526 S.E.2d 732, 737 (2000). "South Carolina has deviated from the majority rule by adopting the concept of libel per quod." *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 506 S.E.2d 497, 510 (1998) (Toal, J., concurring). "A libel per se is one that is actionable on its face. A per quod libel, however, is one [which is] not actionable on its face, but becomes so by reason of the peculiar situation or occasion upon which the words are spoken or written." *Oliveros v. Henderson*, 116 S.C. 77, 106 S.E. 855, 857 (1921) (quotations omitted).[13] "The issue [of whether a statement is "actionable per se"] is one of pleading and proof and is always a question of law for the court." *Fleming*, 526 S.E.2d at 737. "If a defamation is actionable per se, then under common law principles the law presumes the defendant acted with common law malice and that the plaintiff suffered general damages. If a defamation is not actionable per se, then at common law the plaintiff must plead and prove common law actual malice and special damages." *Holtzscheiter*, 506 S.E.2d at 501–02; *see also Fleming*, 526 S.E.2d at 737. Under South Carolina law, "[e]ssentially, all libel is actionable per se." *Holtzscheiter*, 506 S.E.2d at 502.

■■■ "The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Fleming*, 526 S.E.2d at 737. In its amended complaint, Food Lion alleges that UFCW "used legal action for the ulterior purpose

of inflicting economic harm on Plaintiff . . . and ultimately destroy the reputation and business of Plaintiff." Food Lion further alleges that UFCW's abuses of process included "[n]on-privileged publication of various allegations in its pleadings . . . that were demonstrably false, as Defendant knew or should have known. . . ." The complaint includes the following examples, "without limitation," of the false statements allegedly made by UFCW:

(1) Food Lion caused 'irreparable harm' to the eyesight of Rickey Bryant's daughter, due to inability to secure from Plaintiff continuing health care coverage.

(2) Food Lion engaged in a company-wide scheme, pattern and practice of discharging employees to prevent their vesting in Plaintiff's Profit Sharing Plan.

(3) Food Lion and its officials breached their fiduciary duties to the profit sharing participants by adopting a 5 year cliff vesting rule when, in fact, Defendant's president has admitted under oath that a 5 year vesting schedule is appropriate.

Travelers argues that such allegations do not amount to a claim of defamation, but are merely background allegations providing color for Food Lion's abuse of process claim. *See Am. & Foreign Ins. Co. v. Church Schools in the Diocese of Va.*, 645 F.Supp. 628, 634 (E.D.Va.1986) ("[T]he mere fact that the factual allegations of a complaint contain the words 'libel' or 'disparaging' cannot form the basis for coverage. . . .").

■■■ The South Carolina Rules of Civil Procedure require a complaint to contain only "a short and plain statement of the facts showing that the pleader is enti-

---

**13.** In *Holtzscheiter* the Supreme Court of South Carolina disavowed the use of the term "per quod" and instead suggested the use of

the terms "actionable per se" or "not actionable per se." 506 S.E.2d at 501 n. 2.

tled to relief." S.C. Rules Civ. P. 8(a)(2). "This requires a litigant to plead the ultimate facts which will be proved at trial, not the evidence which will be used to prove those facts." *Clark v. Clark,* 293 S.C. 415, 361 S.E.2d 328, 328 (1987). "The allegations of a complaint are to be liberally construed in favor of the pleader." *Stroud v. Riddle,* 260 S.C. 99, 194 S.E.2d 235, 237 (1973). Because Food Lion's complaint alleges that UFCW intended to damage Food Lion's reputation through the knowing and unprivileged written publication of defamatory material that on its face suggests that Food Lion physically and emotionally injured its employees and, in effect, stole from them as well, it has adequately alleged a libel which is action-able on its face under South Carolina law.[14] Construing the allegations of the complaint in favor of Food Lion, the complaint can fairly be said to state a cause of action for libel. Thus, according to the terms of the policy requiring Travelers to defend against suits arising out of "[o]ral or written publication of material that slanders or libels a person or organization," the allegations in the Food Lion complaint state a cause of action within the coverage of the policy.[15]

## V. *Notice, Waiver and Discovery*

### A. Notice of Claim/Tender of Defense

■ Having established that the allegations of libel in the complaint state a

---

**14.** Travelers argues that the 1993 Food Lion Complaint failed to seek damages specifically resulting from defamation, whereas Food Lion specifically mentions in its "general allegations" that UFCW's abuse of process caused Food Lion to "incur enormous costs and expenses in connection therewith, for which [Food Lion] is entitled to damages." In the complaint's actual prayer for relief, however, Food Lion more generally "prays [for] judgment for actual and punitive damages, together with costs, and for such other and further relief as may be just and proper." An open-ended prayer for damages is sufficient under South Carolina notice pleading rules where the allegations otherwise adequately plead libel. *Cf. King v. Allstate Ins. Co.,* 272 S.C. 259, 251 S.E.2d 194, 195 (1979) (rejecting argument that damages were limited to one theory when allegations of the complaint could be read to state another and noting "[t]he prayer for damages in the complaint is general in nature and not confined to damages for [one theory].").

**15.** We note that the alleged libelous material may be subject to a litigation privilege, as the Food Lion complaint notes that UFCW's allegedly libelous statements were made in the pleadings of Food Lion's employee which UFCW is alleged to have improperly encouraged. *See McKesson & Robbins, Inc., v. Newsome,* 206 S.C. 269, 33 S.E.2d 585, 587 (S.C. 1945) ("[L]ibelous or defamatory statements in pleading, when pertinent or material or relevant to real issues involved, are privileged."); Restatement (Second) of Torts § 586 (indicating that an attorney is absolutely privileged to publish defamatory matter in a legal proceeding). In South Carolina, "privilege is an affirmative defense and has to be pleaded." *Porter v. News & Courier Co.,* 237 S.C. 102, 115 S.E.2d 656, 658 (1960); Super. Ct. Civ. R. 87(c). Where privilege appears from the face of the complaint express malice must be alleged. *See Oliveros v. Henderson,* 116 S.C. 77, 106 S.E. 855, 856 (1921). Food Lion's allegation that UFCW "knew or should have known" certain allegations were "demonstrably false" adequately alleges actual or express malice. In addition, Food Lion's complaint against UFCW alleges that the union's defamatory statements were "non-privileged." If the statements attributed to UFCW are determined to be privileged and non-actionable—an issue we do not decide—Food Lion's complaint for libel against UFCW may be dismissed. That possibility, however, does not negate Traveler's duty to defend UFCW if the complaint against it makes out a facial claim for libel, and Food Lion "may be able ... to prove that [its] injuries were caused by some act or omission covered by the terms of the insurance policy." 14 Couch on Insurance 3d § 200:25 (1999). We do not reach the question, which might or might not arise, whether Travelers' duty to defend terminates if the covered claim is dismissed and the remaining claim is not covered under a different provision. *See supra* note 12.

claim within the coverage of the policy, we turn to Travelers' argument that UFCW failed to tender the defense of the 1993 *Food Lion* litigation to Travelers and did not comply with the notice provisions of the insurance contract. Travelers' policies require that "[i]f a claim is made or 'suit' is brought against any insured, [the insured] must see to it that [Travelers] receive[s] prompt written notice of the claim or 'suit.'" The contracts further provide that the insured must "[i]mmediately send [Travelers] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' " The term "suit" is defined in the policy as "a civil proceeding in which damages because of ... 'personal injury' ... to which this insurance applies are alleged." Although "claim" is not a defined term in the policy, its inclusion in addition to the term "suit" contemplates assertions of the insured's liability that are not contained in an actual suit. Generally, "[u]nless the assertion is made in circumstances so unusual that they negate the possibility of a formal proceeding involving defense costs as well as liability, virtually any assertion of exposure to liability within the risk covered by [the] insurance policy is a potential claim." 13 COUCH ON INSURANCE 3D § 191:19 (1999). There is no doubt that Travelers had notice from UFCW that a suit had been initiated against UFCW, having received notice of the suit and copy of the Food Lion complaint in March 1993 soon after it was filed. Nevertheless, Travelers argues that the trial court improperly denied it discovery on the issue of notice, specifically whether Food Lion made "claims," prior to actually filing suit, which UFCW was obligated under the contract to bring to Travelers' attention.

 "[A]n insurer's obligation to defend is triggered only when the insured tenders to the insurer the defense of an action which is potentially within the policy." *Scottsdale Ins. Co. v. Am. Empire Surplus Lines Ins. Co.*, 791 F.Supp. 1079, 1084 (D.Md.1992). In the District of Columbia, "[n]otice provisions in insurance contracts are of the essence of the contract." *Greycoat Hanover*, 657 A.2d at 768. "Notice of the [claim] enables the insurer to make prompt investigation and prepare to defend any action that may be brought." *Lee v. Travelers Ins. Co.*, 184 A.2d 636, 638 (D.C.1962). "[W]here the policy expressly makes compliance with its terms a condition precedent to liability on the part of the insurer, failure to comply with the notice provision will release the insurer of liability on the policy." *Id.; see also Diamond Service Co. v. Utica Mutual Ins. Co.*, 476 A.2d 648, 652 (D.C.1984) ("Notice provisions in insurance contracts are of the essence of the contract."). Contrary to Travelers' averment, however, there is no requirement in its insurance contract with UFCW that an insured must affirmatively request the insurer's assistance before the duty to defend attaches. "In general, a tender of defense occurs once an insurer has been put on notice of a claim against the insured." 14 COUCH ON INSURANCE 3D § 200:35 (1999).

 We have held, however, that insurance policies with notice provisions such as those found in the Travelers–UFCW policies require notice "within a reasonable time in view of all the facts and circumstances of each particular case." *Greenway v. Selected Risks Ins. Co.*, 307 A.2d 753, 755 (D.C.1973). "[R]easonableness of notice is usually a question for the jury." *Starks v. North East Ins. Co.*, 408 A.2d 980, 982 (D.C.1979). "Even in a case involving uncontradicted evidence, the question whether the insured has acted reasonably becomes a question of law only when reasonable persons can draw but one inference...." *Id.* Because "claim" is an undefined contract term, it is a question of fact, within the context of union-management relations between Food Lion and the

UFCW, whether any communication prior to filing of the complaint was a "claim" of which UFCW was required to give notice to Travelers and whether the notice actually given was reasonable under the circumstances.

## B. Waiver

 In holding that Travelers had "waived the defective notice [defense] by failing to take action sooner," the trial court stated that Travelers had "ample time to investigate the claim that had been tendered to it" four years prior to UFCW's filing of the present suit. In response to UFCW's notice of the Food Lion suit, Travelers sent a letter stating that it was "researching the existence, terms and conditions of any applicable policy" and "[u]pon completion of our research and analysis, we will advise you of the extent of The Travelers defense and/or indemnity obligation, if any." The letter also states that "The Travelers fully reserves its rights in this matter, and neither this correspondence nor any future communication or investigation shall be deemed or construed as a waiver of any of the rights and defenses available to The Travelers...." After its letter to UFCW, Travelers never accepted nor denied its obligation to defend the 1993 Food Lion suit, and never reported any decision to its insured. Nevertheless, we disagree with the trial court that Travelers has waived its defective notice defense. "Ordinarily, a waiver requires an intentional relinquishment of a known right." *Grunley Constr. Co. v. District of Columbia*, 704 A.2d 288, 291 n. 5 (D.C.1997). *Cf. FSLIC v. Bur-* *dette*, 718 F.Supp. 649, 653 (E.D.Tenn. 1989) ("If notice provided to an insurer is considered by the insurer to be defective, good faith requires the insurer to notify the insured of its objections within a reasonable time, and if the insurer fails to do so or proceeds to act as though notice was satisfactory, it has waived any right to assert notice as a defense at a later date.").

Although we agree with the trial court that a four-year silence after a timely and proper tender of defense by an insured may compel an inference of waiver as a matter of law, the facts before the court were not so straightforward. Travelers produced affidavit evidence with its cross-motion for summary judgment that 1) Travelers received a letter from David Flowers, UFCW's local counsel in South Carolina, which stated that the Food Lion litigation had been dismissed, but enclosed a copy of Food Lion's motion for reconsideration and to amend the complaint as well as an unsigned proposed amended complaint; 2) that "sometime after" receiving the letter from Flowers, Assistant General Counsel for the UFCW, Richard Roesel, notified Lionel Martin, Travelers' Supervisor for Liability Claims, by telephone that "the Food Lion litigation was concluded and that Travelers did not need to do anything more with respect to the Food Lion litigation"; and 3) that Travelers was never subsequently notified that Food Lion had been allowed to amend its complaint and never received a copy of the filed amended complaint. Travelers argues that UFCW's actions created a triable issue of fact whether Travelers was required to further monitor the suit.[16]

---

16. UFCW does not deny the facts alleged in the Travelers affidavit. Rather, UFCW argues that extrinsic evidence on the issue of notice is not relevant to the question of the duty to defend. *See, e.g. Upjohn Co. v. Aetna Cas. & Sur. Co.*, 768 F.Supp. 1186, 1203 (W.D.Mich. 1990) ("The late notice facts are thus inappropriate to a discussion of the duty to defend— they certainly go beyond the allegations and policy language."). However, in *Greycoat*, we rejected the appellant's argument that it was owed a defense, holding that its late notice "waived its claims to coverage *and to a defense* from the insurers." 657 A.2d at 770 (emphasis added). Thus, in the District of Columbia, late notice is relevant to Travelers'

The trial court found, however, that Travelers was on notice that the suit was still pending from a bill for services through December 1993 submitted by UFCW's local counsel after he withdrew from the Food Lion action, and that Travelers' failure to indicate a defect in notice prior to the filing of the instant suit constituted waiver of the defense. The bill, submitted by UFCW's local counsel and not by the UFCW itself, however, does not reference that the motion for reconsideration of the dismissal or to amend the complaint had been granted, only that the motion was pending, and includes charges for activities that could be interpreted as winding up the suit.[17] Even if the bill put Travelers on notice that the suit was pending, it would still be a question of fact for the jury whether, to avoid waiver of the right to timely notice, Travelers needed to take any further action in light of the letter it had previously received from UFCW's Assistant General Counsel disavowing further assistance from Travelers. *See Towne Realty, Inc. v. Zurich Ins. Co.,* 201 Wis.2d 260, 548 N.W.2d 64, 67 n. 1 (1996) ("There would not ... be a duty on the part of the insurer to contact the insured if correspondence from the insured explicitly stated that it was waiving its contractual right to a defense.").

## C. Discovery

Travelers additionally argues that the trial court erred by granting summary judgment without permitting discovery requested with its opposition to UFCW's motion for summary judgment under Super. Ct. Civ. R. 56(f). According to Travelers, given the realities of major civil litigation between sophisticated business entities and the history of the conflict between Food Lion and UFCW, it is unlikely that Food Lion never sent the UFCW a letter threatening litigation or a draft complaint prior to actually filing suit, and that such a letter or draft complaint would constitute a "claim" which UFCW had an obligation to bring to Travelers' attention. Thus, Travelers argues, it is entitled to discovery pursuant to Super. Ct. Civ. R. 56(f) in order to prove that UFCW's notice was untimely.

 A trial court's denial of a motion for discovery under Rule 56(f) is reviewed for abuse of discretion. *See Novecon Ltd. v. Bulgarian–American Enter. Fund,* 338 U.S.App. D.C. 67, 81, 190 F.3d 556, 570 (1999). Superior Court Civil Rule 56(f) "affords protection against the premature or improvident grant of summary judgment by permitting a nonmovant to file an affidavit stating how discovery would enable him or her to effectively oppose the summary judgment motion." *D'Ambrosio v. Colonnade Council of Unit Owners,* 717 A.2d 356, 359 (1998) (alterations omitted).[18] "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit

---

duty to defend and liability for past and future defense costs of UFCW.

**17.** If it is determined that UFCW gave proper contractual notice, there may still be an issue for the trier of fact whether Travelers was under any contractual duty vis-à-vis the suit after the alleged phone call from Roesel in which he stated Travelers need not do anything further in regards to the Food Lion litigation.

**18.** Rule 56(f) provides:

*When affidavits are unavailable.* Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Super. Ct. Civ. R. 56(f) (2000).

of a party's opposition." *First Chicago Int'l v. United Exch. Co.*, 267 U.S.App. D.C. 27, 32, 836 F.2d 1375, 1380 (1988) (citing *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The court has a "duty under Rule 56(f) to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling on a motion for summary judgment." 11 MOORE'S FEDERAL PRACTICE § 56.10[8][a] (3d ed.2000). Rule 56(f) requests should be "liberally construed." *Id.*

 Under Rule 56(f) a court *"may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion."* *Strang v. United States Arms Control & Disarmament Agency*, 275 U.S.App. D.C. 37, 39, 864 F.2d 859, 861 (1989). A party must have been diligent in pursuing discovery before the summary judgment motion it is opposing was made. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir.1997). Further, the party opposing summary judgment must specify why additional discovery is necessary. *See Ben Ezra, Weinstein, & Co., Inc., v. America Online, Inc.*, 206 F.3d 980, 987 (10th Cir.2000) ("A party may not invoke Fed.R.Civ.P. 56(f) by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. Rather, the party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact."); *Dowling v. Philadelphia*, 855 F.2d 136, 139–40 (3d Cir.1990) (interpreting Rule 56(f) as "imposing a requirement that a party ... specify[ ], for example, what particular information is sought; how, if uncovered, it would pre-

clude summary judgment; and why it has not been previously obtained").

 Travelers' Rule 56(f) affidavit, signed by its attorney, David Douglas,[19] and appended to its opposition to summary judgment, merely states that:

The information available to me raises genuine issues of material fact relevant to determining whether the UFCW is entitled to coverage for the underlying claim under the insurance contracts issued by Travelers. Travelers has had insufficient time, however, to obtain discovery on these issues. Travelers requires additional information to fully develop facts essential to supporting its position that the UFCW is not entitled to a defense or indemnity for the underlying litigation.

Thus, on its face, Travelers' affidavit is insufficient to invoke the protection of Rule 56(f). In its opposition to summary judgment, however, Travelers fleshed out its need for formal discovery on the question whether UFCW's contractual notice was timely, pointing to the documented history of conflict between Food Lion and the UFCW, which began well before the Food Lion litigation. Noting that unreasonable notice for the insured releases an insurer from the duty to defend, Travelers' opposition states that "[g]iven the intensity and history of the conflict between UFCW and Food Lion, it is unlikely that UFCW did not recognize its exposure for its actions, or that Food Lion never sent UFCW a letter threatening litigation or a draft complaint in an effort to blunt the corporate campaign without resorting to litigation." Travelers' opposition noted that UFCW had not responded to prior document requests in which Travelers had joined and that Travelers could not fully

---

19. Because the trial court treated the Rule 56(f) affidavit as having been properly filed, we assume for purposes of this opinion, but do not hold, that Travelers' Rule 56(f) affidavit, signed by its attorney, was a proper request for Rule 56(f) relief.

respond to UFCW's summary judgment motion until it had discovery regarding facts essential to its notice defense.

■ Travelers pursued discovery during the three and one-half months between the filing of UFCW's complaint and its motion for summary judgment,[20] joining document requests by fellow defendants and serving its own interrogatories and document request on UFCW on April 23, 1997, which included the following:

Interrogatory No. 7:

> Please identify all directors, officers and/or employees of any Plaintiff who have communicated with Food Lion, and/or any person acting on its behalf ... please provide their position, dates of employment, nature of their communication with Food Lion ...

and

Document Request:

> 8. All correspondence between you and Food Lion concerning or relating to any actual or alleged action by you with respect to Food Lion from 1980 to the present.

UFCW has not responded to these requests.[21]

The trial court rejected Travelers' "rel[iance] only on general allegations of the need for discovery" in its Rule 56(f) affidavit and ruled that Travelers had waived any defective notice by waiting four years to question the sufficiency of UFCW's notice under the insurance contract, from the time UFCW notified Travelers of the Food Lion suit until after UFCW filed suit to enforce Travelers' duty to defend.[22] Although we agree with the trial court that Travelers' Rule 56(f) affidavit relies only on general allegations of the need for discovery and, standing alone, would not normally be satisfactory to preserve its right to further discovery prior to judgment, a "flexible approach" is warranted under the circumstances. *First Chicago Int'l,* 267 U.S.App. D.C. at 32, 836 F.2d at 1380 (1988). In *First Chicago Int'l,* the United States Court of Appeals for the District of Columbia Circuit held that a litigant was entitled to further discovery prior to summary judgment, despite the failure to file a Rule 56(f) affidavit, because "other documents filed by the plaintiff—such as opposing motions and

---

**20.** UFCW's complaint was filed November 11, 1996, and its summary judgment motion on April 4, 1997.

**21.** The parties entered into an informal agreement that they "need not respond to the outstanding requests for production of documents or interrogatories" until after the court had ruled on their cross motions for summary judgment. With the agreement "no party waive[d] its right to the discovery sought. Nor [did] the agreement reflect an admission by any party that discovery is not required for the proper adjudication of any claim, defense or counterclaim asserted in this matter." Although Travelers' request for further discovery was inconsistent with this agreement, it is incumbent on the court to make sure that the parties have had an opportunity to develop the record before ruling on a summary judgment motion, particularly where, as here, a

party claims the need for discovery. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment appropriate only "after adequate time for discovery").

**22.** We note that there is a difference between the four years between UFCW's tender of defense and the filing of the instant suit that the trial court apparently considered "ample time to investigate the claim that had been tendered to it," and the time for Rule 23 discovery available to Travelers after the filing of the instant lawsuit. Rule 56(f) contemplates Rule 23 discovery. In any event, as discussed earlier, there is a question whether Travelers sat on its rights for four years or, rather, reasonably relied on the statements of UFCW's attorney that no further action was required from Travelers.

outstanding discovery requests—sufficed to alert the district court of the need for further discovery and thus served as the functional equivalent of an affidavit." *Id.; see also Novecon,* 977 F.Supp. at 54 (noting *First Chicago Int'l* exception to the Rule 56(f) affidavit requirement). Although Rule 56(f) requires that a sufficient affidavit be filed to preserve a party's argument that summary judgment should be denied or delayed pending further discovery, on the facts of this case, Travelers' opposition to UFCW's motion for summary judgment and outstanding discovery request, filed in conjunction with its Rule 56(f) affidavit, sufficed to alert the trial court of the need for further discovery on the adequacy of UFCW's notice under the insurance contract. Thus the grant of summary judgment before affording such discovery was premature.[23] We caution, however, that the specific basis and explanation for the need for discovery set forth in Travelers' opposition should ordinarily be set forth in the Rule 56(f) affidavit itself.

Accordingly, we affirm the trial court insofar as it found that the allegations of the 1993 Food Lion suit state a claim against UFCW covered by the Travelers policy, albeit on the alternative ground that the claim is covered under the provision for "written publication of material that ... libels ... [an] organization." We reverse the grant of summary judgment to UFCW as premature and remand for discovery, limited to the issue whether Food Lion made a claim prior to the filing of the 1993 Food Lion suit which triggered UFCW's obligation to notify Travelers, and consideration of UFCW's motion for summary judgment in light of this opinion

and any relevant facts uncovered during discovery.

*So ordered.*

---

**23.** As we have held that the issue of the timeliness of UFCW's notice is a precondition to Travelers' duty to defend, we disagree with the trial court's reasoning that allowing discovery would "eviscerate the duty to defend.... Thereby requiring [UFCW] to twice defend itself on the underlying claims before ever securing the relief it purchased under the policy."