*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0033

MAHMOOD NAWAZ, APPELLANT

V.

BLOOM RESIDENTIAL, LLC, *et al*., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-000703-B)

(Hon. Robert R. Rigsby, Trial Judge)

(Submitted February 14, 2023          Decided February 8, 2024)

*Richard J. Bianco* was on the brief for appellant.

*Stephen O. Hessler* was on the brief for appellee William Clayton Batchelor, Successor Trustee.

*Spencer B. Ritchie*, with whom *Richard W. Luchs*, and *Gwynne L. Booth*, were on the brief, for appellee Bloom Residential, LLC.

Before EASTERLY and MCLEESE, *Associate Judges*, and GLICKMAN, *Senior Judge*.

EASTERLY, *Associate Judge*: Appellant Mahmood Nawaz entered into a

contract with appellee William Clayton Batchelor, the Successor Trustee of Francis

Lorson 40th Street, NW ("the Trustee") to purchase a four-unit property at 2216 40th Street, NW ("the property"). The Trustee and co-appellee Bloom Residential, LLC, who together held all the tenants' assigned rights under the Tenant Opportunity to Purchase Act of 1980, D.C. Code § 42-3404.01 to -3404.13 ("TOPA"), subsequently entered into a contract for Bloom Residential to purchase the property. After they were unable to close on the sale on the contracted date for settlement because Mr. Nawaz maintained he still had an enforceable contract, the Trustee and Bloom Residential successfully sued Mr. Nawaz for a declaratory judgment that their contract held priority over Mr. Nawaz's contract and that his third-party contract, though earlier in time, was unenforceable under TOPA.

Mr. Nawaz now challenges the Superior Court's decision to award summary judgment on Bloom Residential and the Trustee's claim for declaratory relief under TOPA, as well as the court's decision to direct payment of Bloom Residential's and the Trustee's fees and costs and to impose sanctions for Mr. Nawaz's failure to post security pursuant to D.C. Code § 15-703(a) (requiring out-of-state plaintiffs to post security). We affirm the Superior Court's ruling on the declaratory judgment claim and reject Mr. Nawaz's arguments that the Bloom Residential contract had expired or that the Trustee was obligated to close on his contract before Bloom Residential had an opportunity to make an offer to purchase the property—arguments which reflect a fundamental misunderstanding of TOPA. We also reject Mr. Nawaz's

argument that he was entitled to discovery before the Superior Court ruled on the declaratory judgment claim. Because Mr. Nawaz does not appear to raise additional grounds to challenge the Trustee's entitlement to summary judgment on his claim that Mr. Nawaz tortiously interfered with the Bloom Residential contract, we affirm the Superior Court's global summary judgment award as to that claim as well. Lastly, we affirm the Superior Court's order awarding attorney's fees and costs to both Bloom Residential and the Trustee but reverse its order sanctioning Mr. Nawaz for failing to post security for the Trustee's costs under D.C. Code § 15-703(a), which we hold has no application to Mr. Nawaz as an out-of-state counterclaimant.

## I.      Facts and Procedure

Around September 2020, the Trustee informed the tenants of the four-unit property that he intended to sell. Unit #3 stood vacant. The tenants in Units #2 and #4 promised to assign the Trustee their purchase rights under TOPA upon receipt of notice of a third-party offer. The tenants in Unit #1 retained their TOPA rights at this time.

On October 5, 2020, the Trustee ratified a GCAAR form contract[1] to sell the

---

[1] GCAAR (the Greater Capital Area Association of Realtors) is a local realtor association that, among other things, provides members with access to standard real estate forms. *Real Estate Forms*, Greater Capital Area Ass'n of Realtors, https://gcaar.com/realtor-tools/contract-forms; https://perma.cc/5QB2-8KQF (last visited Jan. 5, 2024).

building to Mr. Nawaz. The Trustee also ratified a Tenancy Addendum for the District of Columbia which made it clear that, pursuant to TOPA, the property's tenants had a right to notice of Mr. Nawaz's third-party contract and would retain "a right of first refusal" to purchase the property on the same terms within fifteen days of being given notice.[2] The Trustee provided the property's tenants notice of the Nawaz contract on October 9. On October 12 and 25, the Unit #2 and #4 tenants executed an assignment of their TOPA rights to the Trustee.

On October 17, 2020, the tenants in Unit #1 assigned their TOPA rights to Bloom Residential. Bloom Residential then informed the Trustee on October 19, 2020, that it wished to exercise its assigned right of first refusal under TOPA; it was "ready to perform under the terms presented" in the Nawaz contract; and it would be "ready to go to closing on or before December 15th, 2020, if the Seller responds quickly to this assignment." On November 4, 2020, Bloom Residential and the Trustee ratified a contract using the GCAAR form that was nearly identical to the

_____

[2] In fact, tenants in a 2–4-unit building may have more time to exercise their right of first refusal under D.C. Code § 42-3404.10 ("The tenants may respond to an owner's offer first jointly, then severally. Upon receipt of a written offer of sale from the owner that includes a description of the tenant's rights and obligations under this section, or upon the Mayor's receipt of a copy of the written offer of sale, whichever is later, a group of tenants acting jointly shall have 15 days to provide the owner and the Mayor, by hand or by sending by certified mail, with a written statement of interest. Following that time period, if the tenants acting jointly have failed to submit a written statement of interest, an individual tenant shall have 7 days to provide a statement of interest to the owner . . . .").

Nawaz contract and included a Tenancy Addendum. Like the Nawaz contract, the Bloom Residential contract required title to be "good of record, marketable, and insurable by a licensed title insurance company with no additional risk premium." In addition, the Bloom Residential contract included a statement that

> The Contract is being entered into pursuant to the exercise of tenant rights under the Rental Housing Conversion and Sale Act, D.C. code sec 43-402 et seq ("Act"). To the extent the terms of the Contract are inconsistent with the Act, the provisions of the Act shall apply.

The Bloom Residential contract also included a General Addendum that stated that the property's tenants had been given notice of a third-party contract—clearly the Nawaz contract—on October 9, 2020, and stated that settlement "shall take place on or before December 15, 2020."

Also on November 4, 2020, the Trustee asked Mr. Nawaz to release him from their contract. Mr. Nawaz refused. As a result, Bloom Residential's title insurance company would not issue title insurance for the property, and the Trustee and Bloom Residential could not close by the December 15, 2020, deadline. The Trustee and Bloom Residential then sued Mr. Nawaz in Superior Court on March 5, 2021.

In their complaint, Bloom Residential and the Trustee alleged that they were entitled to a declaratory judgment that, pursuant to TOPA, the Bloom Residential contract was valid and binding and the Nawaz contract was void, and requested an award of attorney's fees. The Trustee also alleged that Mr. Nawaz tortiously

interfered with the Bloom Residential contract, entitling the Trustee to damages, attorney's fees, and costs.

Mr. Nawaz, initially appearing without a lawyer, answered the complaint and, as relevant here, denied that the "Bloom Contract . . . supersedes the Nawaz contract pursuant to TOPA." In the preface to his counterclaims, Mr. Nawaz asserted that because the Trustee and Bloom Residential had failed to timely close on their contract, the Bloom Residential contract had "lapsed," and his third-party contract was "restored to its priority." On this basis, Mr. Nawaz requested (1) a declaratory judgment that the Bloom Residential contract expired on the settlement date—December 15, 2020—designated in that contract and was therefore void and (2) an order that the Trustee perform on the Nawaz contract. In a series of orders detailed below, the Superior Court denied Mr. Nawaz's requests and granted relief to the Trustee and Bloom Residential.

### A.    First Omnibus Order

The Superior Court's first omnibus order, issued on August 2, 2021, awarded Bloom Residential summary judgment on its request for declaratory relief and on Mr. Nawaz's counterclaims.[3] After finding that it was undisputed that the Trustee

---

[3] The court also granted the Trustee summary judgment but, by a separate order issued that same day, vacated this award, acknowledging that it had granted Mr. Nawaz's newly retained counsel leave to file an opposition to the Trustee's summary judgment motion which the Trustee had filed after Mr. Nawaz filed his pro

and Bloom Residential possessed all the TOPA rights to the property at the time they entered into a contract and that Mr. Nawaz did "not dispute the superiority of Bloom's TOPA rights to his purchase rights," the court rejected Mr. Nawaz's argument that the Bloom Residential contract had lapsed because the parties had failed to close by December 15, 2020. The court reasoned that the December date was intended to be "a placeholder" and that, even if the parties had not agreed to an extension, the COVID-19 Response Emergency Amendment Act of 2020, D.C. Act 23-247 § 312(a), 67 D.C. Reg. 3093 (Mar. 17, 2020), suspended all tenant deadlines under TOPA. Having concluded that Bloom Residential was a prevailing party under TOPA, the court awarded it attorney's fees and costs under D.C. Code § 42-3405.03 (authorizing, among other things, an "aggrieved" tenant to seek judicial enforcement of any right or provision under TOPA, and, "upon prevailing, . . . seek an award of costs and reasonable attorney['s] fees").

The Superior Court also denied Mr. Nawaz's motion to reconsider its order granting the Trustee's unopposed request that Mr. Nawaz, a Virginia resident, be

---

se opposition to Bloom Residential's earlier-filed motion for summary judgment. In fact, the Superior Court had, at a July 2, 2021, status hearing, orally granted Mr. Nawaz's counsel an opportunity to file a new opposition motion to *both* Bloom Residential's and the Trustee's motions for summary judgment. But rather than vacating the order granting summary judgment as to both parties, the Superior Court, in its August 2, 2021, order, left standing its August 2, 2021, grant of summary judgment to Bloom Residential.

required to post security for costs under D.C. Code § 15-703(a) (authorizing a "defendant in a suit instituted by a nonresident of the District of Columbia" to require a plaintiff to post "security for costs and charges that may be adjudged against him"). Apparently hewing to the Trustee's theory that he was a defendant to Mr. Nawaz's counterclaims, the court stated that it "remain[ed] satisfied" on the record presented that security for costs was appropriate.

## B.  Second Omnibus Order

The Superior Court's second omnibus order, issued on August 26, 2021, awarded the Trustee's motion for summary judgment on his declaratory judgment claim, duplicating word for word its analysis in its first omnibus order addressing Bloom Residential's request for a declaratory judgment.[4]  In doing so, the court did not address Mr. Nawaz's new argument through retained counsel disputing that "the

---

[4]  As noted, *see* n.3 *supra*, at a July 2021 status hearing, the court orally granted Mr. Nawaz's new counsel leave to file an opposition to both the Trustee and Bloom Residential's pending summary judgment motions by August 2, 2021.  But the day Mr. Nawaz's joint opposition was due, the court went ahead and issued summary judgment to the Trustee and Bloom Residential.  Partially recognizing its mistake, the court then vacated the summary judgment order only with respect to summary judgment for the Trustee.  At that point, Mr. Nawaz's counsel did not move for reconsideration or argue that the court had given him more time to file an opposition to both motions.  He simply acted in conformance with the court's oral ruling and filed a joint opposition to both the Trustee's and Bloom Residential's requests for summary judgment on the merits.  The Superior Court's second omnibus order did not revisit its decision to award Bloom Residential summary judgment and only considered summary judgment in favor of the Trustee.

Nawaz Contract was subordinate to the Bloom [Residential] Contract." The court also failed to address Mr. Nawaz's new argument that he should have been granted discovery pursuant to Rule 56(d) before the court ruled on the Trustee's motion for summary judgment.[5]

Analyzing the Trustee's TOPA claim but saying nothing about its claim for tortious interference, the court concluded that the Trustee was entitled to summary judgment in full and to fees under TOPA, D.C. Code § 42-3405.03. The court also granted the Trustee's motion for sanctions based on Mr. Nawaz's continued failure to post security pursuant to D.C. Code § 15-703(a), as previously directed.

### C.    Third Omnibus Order

In its third omnibus order, the Superior Court denied Mr. Nawaz's motion for reconsideration of its Second Omnibus Order, in which he challenged the court's failure to address his arguments that the Nawaz contract was not subordinate to the Bloom Residential contract. Mr. Nawaz also continued to assert that he was entitled to "full discovery related to facts that" he claimed "the parties agree are material to the disposition of the case." The court summarily rejected Mr. Nawaz's motion for reconsideration, concluding that Mr. Nawaz had presented "no error of law, or new

---

[5] Mr. Nawaz had asserted in his pro se opposition to Bloom Residential's motion for summary judgment that discovery was needed but he did not cite Rule 56(d) or file a motion with the requisite affidavit requesting discovery under the rule.

evidence," and awarded the Trustee and Bloom Residential the attorney's fees and costs in the specific amounts they had requested.

This timely appeal followed.

## II.     Analysis

### A.     The Superior Court's Grant of Summary Judgment to Bloom Residential and the Trustee on Their Claim for a Declaratory Judgment

Mr. Nawaz challenges the Superior Court's decision to award summary judgment to Bloom Residential and the Trustee on the merits of their declaratory judgment claims.  "We review a grant of summary judgment de novo, applying the same standard as the trial court." *Kolowski v. District of Columbia*, 244 A.3d 1008, 1012 (D.C. 2020) (internal quotation marks and italics omitted).  The moving party "is entitled to summary judgment only upon demonstrating that no genuine issue of material fact remains for trial and that judgment is warranted as a matter of law." *MobilizeGreen, Inc. v. Cmty. Found. for the Cap. Region*, 267 A.3d 1019, 1024 (D.C. 2022) (internal quotation marks omitted).  To determine whether summary judgment is proper, "[w]e view the record in the light most favorable to the non-moving party." *Kolowski*, 244 A.3d at 1013 (internal quotation marks omitted).

In granting Bloom Residential and the Trustee summary judgment, the Superior Court found that Mr. Nawaz had conceded that the Bloom Residential contract was superior under TOPA to the Nawaz contract and rejected Mr. Nawaz's

argument that the Bloom Residential contract expired when the parties did not close by the closing date specified in the contract, December 15, 2020.  On appeal to this court, Mr. Nawaz renews the arguments he made in his second opposition motion (arguments the Superior Court did not address, *see* I.B. *supra*) and disputes that the Bloom Residential contract was superior under TOPA to the Nawaz contract. Mr. Nawaz asserts (1) that *his* contract with the Trustee had priority status under the statute because "TOPA compliance" was achieved, either when the tenants in Units #2 and #4 assigned their purchase rights to the other party to his contract, the Trustee, or when the tenants in Unit #1 assigned their rights to Bloom Residential. Alternatively, Mr. Nawaz argues, as he did in his first and second opposition motions, that (2) the Bloom Residential contract became void once the parties failed to close on December 15 and the parties failed to agree (or put forward any evidence of an agreement) to extend the closing deadline, and (3) the Superior Court's grant of summary judgment was premature because the parties had not yet conducted discovery.  We address and reject each of these arguments in turn.

### 1. Superiority of the Bloom Residential Contract under TOPA

Mr. Nawaz argues as he did in Superior Court that his contract was in fact superior to the Bloom Residential contract under TOPA.  Although the Superior Court did not acknowledge, much less address this argument, we conclude that we need not remand this claim to the court for consideration in the first instance.  For

the reasons set forth below, this argument fails as a matter of law, and remand would be futile. *See, e.g.*, *United States v. Brown*, 700 A.2d 760, 762 (D.C. 1997) (declining to remand where trial court failed to make essential findings because there could "be only one result . . . as a matter of law").

Because Mr. Nawaz's argument about the superiority of his third-party contract reflects a fundamental misunderstanding of TOPA, we review some basic principles. TOPA is a remedial statute that aims to "protect tenant[s]" by giving tenants the "opportunity to purchase" housing accommodations before the owner may sell those accommodations to a third party. *1618 Twenty-First St. Tenants' Ass'n v. Phillips Collection*, 829 A.2d 201, 203-04 (D.C. 2003). Any third-party contract to purchase housing is "conditional upon [the] exercise of tenant rights." D.C. Code § 42-3404.04. Among the rights that TOPA extends to tenants is "a right of first refusal on any sale contract the landlord negotiates with a third party." *1836 S Street Tenants Ass'n, Inc. v. Est. of B. Battle*, 965 A.2d 832, 838 (D.C. 2009). TOPA also allows tenants to "broadly assign[]" their rights to third parties. *Morrison v. Branch Banking & Trust Co. of Va.*, 25 A.3d 930, 935 (D.C. 2011); *see* D.C. Code § 42-3404.06. Tenants may assign their purchasing rights to any party, *Allman v. Snyder*, 888 A.2d 1161, 1167-68 (D.C. 2005), and to ensure that the assignment is "something of value" that can benefit tenants, *id.* at 1169-70, the assignee stands fully in the shoes of the tenants vis-à-vis any purchase.

Here, it is undisputed that, after learning of the proposed sale to Mr. Nawaz, the Unit #1 tenants assigned their TOPA rights to Bloom Residential. Bloom Residential then exercised its assigned right of first refusal and contracted to buy the subject property from the Trustee. Because Bloom Residential contracted to purchase the property as a TOPA-assignee, its contract supplanted Mr. Nawaz's conditional right to purchase the subject property pursuant to his third-party contract. *See* D.C. Code § 42-3404.04.

Mr. Nawaz is mistaken that his contract was superior because "TOPA compliance" was achieved before the Bloom Residential contract was signed. First, the fact that the tenants in two of the units assigned their TOPA rights to the Trustee as seller did not give Mr. Nawaz's contract any special status. The Trustee could acquire the tenants' TOPA rights by assignment because tenants may assign their rights to anyone. D.C. Code § 42-3404.06; *Allman*, 888 A.2d at 1167-68. But because TOPA only affords special rights to tenant assignees hoping to *purchase* housing accommodations, not to sell them, *see* D.C. Code § 42-3404.02(a), the Trustee acquired these rights for the purpose of ensuring no one else could exercise them—not for the purpose of purchasing the property which the Trust already owned. The only assignment of rights that gave any contract superiority was the assignment of the Unit #1 tenants' rights to Bloom Residential as a buyer. Mr. Nawaz's ability to purchase the property as a third-party buyer was therefore

contingent on whether Bloom Residential decided to exercise its assigned TOPA rights. *See, e.g.*, *William J. Davis, Inc. v. Tuxedo LLC*, 124 A.3d 612, 618 (D.C. 2015) (explaining that "a third-party purchaser only has a conditional right to the property, subject to the exercise of tenant rights under the Act") (internal quotation marks omitted). Once Bloom Residential chose to purchase the property, Mr. Nawaz's contract took a back seat.

Second, Mr. Nawaz's contract did not become enforceable under TOPA when the Unit #1 tenants assigned their TOPA rights to Bloom Residential. Mr. Nawaz claims that at that point, with all three tenants having assigned their rights, the Trustee achieved "TOPA Compliance," as defined in the Nawaz contract, triggering a duty to settle even before Bloom Residential had the opportunity to enter into a contract with the Trustee. But the statute, not the Nawaz contract, defines the parties' obligations under TOPA, *see, e.g.*, D.C. Code § 42-3404.07 (tenant's right to receive an offer of sale under TOPA is not waivable), and, under the statute, the Trustee was not free to proceed to settlement with Mr. Nawaz once the Unit #1 tenants had assigned their rights, *see* D.C. Code §§ 42-3404.08 (requiring owners to give tenants time to exercise their right of first refusal); 42-3404.10 (granting tenants time to respond to an offer of sale, negotiate a contract, and secure financing). Indeed, had the Trustee proceeded to closing with Mr. Nawaz, without negotiating with Bloom Residential, he would have violated the statute. *See* D.C. Code

§§ 42-3404.02 (granting tenants the opportunity to purchase); 42-3404.05(a) (requiring owners to negotiate in good faith).[6] Rather, TOPA obligated the Trustee to treat Bloom Residential as a tenant and give it the "opportunity to purchase" the property, an opportunity Bloom Residential attempted to exercise. *See* D.C. Code § 42-3404.02(a); *Allman*, 888 A.2d at 1169-70 (TOPA assignees must be treated as tenants for purposes of the Act).

In short, Mr. Nawaz is wrong to claim that *his* contract held priority in spite of Bloom Residential's attempt to exercise its TOPA rights.

### 2.      Viability of the Bloom Residential Contract under TOPA

Next, we consider whether, even if initially superior to the Nawaz contract, the Bloom Residential contract lost priority and expired on December 15, 2020. In

---

[6] Mr. Nawaz argues, in the alternative, that if the Trustee was not required to close on the Nawaz contract, it was because the Trustee breached the Nawaz contract by failing to contact the Settlement Agent to determine how to reach "TOPA Compliance." Using somewhat circular language, the Nawaz contract required the Trustee to "contact [the] Settlement Agent within 3 Business Days of Ratification to determine that Seller is either in compliance with both TOPA Notice requirements and title insurance underwriting requirements . . . or to establish the necessary steps to be in compliance with such requirements (either of which shall constitute 'TOPA Compliance')." But again, regardless of the language in the contract, the statute, and not the contract, defines the parties' rights under TOPA and controls whether the Trustee could legally proceed to closing on the Nawaz contract. And again, even if the Trustee had contacted the Settlement Agent within three days of ratifying the Nawaz contract, the Trustee would not have been able to proceed to closing on the Nawaz contract, as he was required to give the Unit #1 tenants, and Bloom Residential as their assignee, time to negotiate to purchase the property.

its first and second orders, the Superior Court determined that the Bloom Residential contract had not expired, and therefore still held priority under TOPA because Bloom Residential and the Trustee intended the December 15, 2020, settlement deadline in the Bloom Residential contract "to be a placeholder with the settlement date contracted as '30 days following TOPA compliance.'"[7] Undertaking an "independent review of the record," we disagree. *MobilizeGreen*, 267 A.3d at 1024 (internal quotation marks omitted).

The record demonstrates that, prior to entering the contract, Bloom Residential expressed a desire to close on the property by December 15, 2020. Rather than make the settlement timeline in their contract flexible, Bloom Residential and the Trustee signed a contract addendum explicitly providing that "[s]ettlement *shall take place* on or before December 15, 2020." (emphasis added). Contrary to Bloom Residential's and the Trustee's argument and the Superior

---

[7] The Superior Court also concluded that, "even if the [appellees] had not agreed to an extension," the Bloom Residential contract did not expire on December 15, 2020, because the District's COVID-19 Response Emergency Amendment Act of 2020, D.C. Act 23-247 § 312(a), "tolled all TOPA deadlines." It is unclear if the contractual December 15 closing date was a TOPA deadline such that it could have been tolled by the Emergency Amendment Act, *see* D.C. Act 23-247 § 312(a) (providing that "[a]ll deadlines for tenants and tenant organizations to exercise rights under [TOPA] that will occur during a period of time for which a public health emergency has been declared . . . are extended to a date 30 days following the end of the public health emergency"). But because we conclude we may affirm on other grounds, *see infra*, we need not reach this question.

Court's conclusion, there is no evidence in the record that Bloom Residential and the Trustee believed the December 15 date to be flexible in spite of the addendum's express language. While the Tenancy Addendum stated that "if Settlement does not occur on the Settlement Date due to Seller not having accomplished TOPA compliance, . . . then the Settlement Date shall automatically be extended," it also clarified that this automatic extension would not apply if the "Buyer and Seller" "otherwise agreed." And although the contract required the Trustee to provide Bloom Residential with marketable and insurable title, we disagree that that requirement, on its own, could be "reasonably interpreted to constitute an extension of negotiations." *Tuxedo*, 124 A.3d at 618 (internal quotation marks omitted). There is also no evidence in the record that Bloom Residential and the Trustee sought to extend the settlement date after signing the contract. Indeed, Bloom Residential and the Trustee submitted no evidence of any communication between them after they ratified the contract.

Based on the record, we cannot conclude that Bloom Residential and the Trustee believed the December 15 settlement date to be a flexible "placeholder" that they intended to modify at some later point in time. That said, the record contains no indication that either Bloom Residential or the Trustee intended to walk away from the contract after the December 15 date passed. Quite the opposite, they sued Mr. Nawaz so that they could perform their obligations under the contract. Because

Mr. Nawaz was the impediment to their ability to close on the agreed upon date, we reject his challenge to the Bloom Residential contract on the grounds that it had expired.

As the record establishes, Bloom Residential's title insurance company would not issue an insurance policy for the property while Mr. Nawaz held a competing contract. Without the insurance policy, Bloom Residential and the Trustee could not proceed to closing under contract's terms. Mr. Nawaz perpetuated this stalemate by refusing to release the Trustee from the Nawaz contract, despite knowing that the Trustee had entered into a contract for the property with Bloom Residential pursuant to its assigned TOPA rights.

As this court has reiterated, "TOPA is a remedial statute, and it is to be generously construed toward the end of strengthening the legal rights of tenants or tenant organization[s] to the maximum extent permitted under law." *Richman Towers Tenants' Ass'n, Inc. v. Richman Towers LLC*, 17 A.3d 590, 601 (D.C. 2001) (quoting D.C. Code § 42-3405.11) (internal quotation marks omitted). To effectuate that intent, we must "deal with the substance rather than the form of transactions" and look to the "practical consequences of the existing situation." *Id.* at 602 (internal quotation marks omitted). We must also be mindful of "sophisticated as well as simple-minded modes of nullification or evasion," *id.* (internal quotation marks omitted), and ensure that "the rights of the tenants [remain] paramount in relation to

those of others," *Tuxedo*, 124 A.3d at 618. Allowing putative third-party buyers such as Mr. Nawaz to obstruct the performance of a tenant's contract until a tenant loses priority under TOPA would render meaningless tenants' right of first refusal. *See* D.C. Code § 42-3404.08.

We therefore hold that where a third party obstructs a tenant's ability to exercise their rights by preventing the tenant from being able to close on a contract entered into pursuant to TOPA, the third party cannot challenge the priority of the tenant's contract based on that same failure to close. To meet this standard, the third-party obstruction must be clear, and it must be the cause of the tenant's inability to proceed to settlement. *Cf. Psaromatis v. English Holdings I, L.L.C.*, 944 A.2d 472, 487-88 (D.C. 2008) (rejecting claim that a third-party buyer prejudiced a seller's ability to close on a contract with a tenants' association under TOPA by refusing to lift a notice of lis pendens where "[a]mple record evidence" demonstrated that "other impediments under [the seller]'s control . . . prevented [it] from conveying insurable and marketable title"). A tenant or seller may show clear obstruction, for example, by demonstrating that the third party's actions meet each of the elements of tortious interference with contract, apart from damages. *See Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008) ("To prevail on a claim of tortious interference with contract, a plaintiff must establish: (1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional

procurement of the contract's breach, and (4) damages resulting from the breach.") (internal quotation marks omitted).[8]

Here, Bloom Residential and the Trustee have met the necessary elements to demonstrate that Mr. Nawaz obstructed their contract, such that we will not deem it to have lapsed. Bloom Residential and the Trustee have shown that they entered into a contract to purchase the property, Mr. Nawaz knew Bloom Residential had entered the contract as a tenant-assignee, and Mr. Nawaz refused to release his competing contract to allow the Bloom Residential contract to proceed to settlement.[9]

---

[8] We conclude that a tenant need not establish damages to demonstrate obstruction sufficient to meet this standard because requiring a tenant to wait to seek a declaratory judgment until they incur and can prove damages, such as through a lost contract, would similarly undermine TOPA's remedial intent. *See* D.C. Code § 42-3405.11.

[9] Mr. Nawaz nevertheless asserts that, even if Bloom Residential held a superior, unexpired contract under TOPA, TOPA does not obligate him to release his contract to allow Bloom Residential's contract to move forward. That may be so. But TOPA also does not allow Mr. Nawaz to use a tenant's inability to perform on a contract because of his refusal to grant a release as a basis to void the tenant's contract. Instead, TOPA permits aggrieved owners and tenants to seek a declaratory judgment to resolve uncertainty between competing contracts and clarify their rights under the statute. *See* D.C. Code § 42-3405.03 (authorizing "[a]n aggrieved owner [or] tenant" to "seek enforcement of any right or provision under [TOPA] through a civil action"). That is precisely what Bloom Residential and the Trustee did here, enabling the Superior Court to declare the Bloom Residential contract superior and the Nawaz contract void.

### 3. Mr. Nawaz Was Not Entitled to Discovery Pursuant to Rule 56(d)

Mr. Nawaz claims that the court erred in granting Bloom Residential and the Trustee summary judgment because he was entitled to more time for discovery under Super. Ct. Civ. R. 56(d). Again, the Superior Court did not address this argument, and again we conclude that remand is not required. Even though Mr. Nawaz's entitlement to discovery implicates a question of discretion, *see Travelers Indem. Co. of Ill. v. United Food & Com. Workers Int'l Union*, 770 A.2d 978, 993 (D.C. 2001) (identifying abuse of discretion as the standard for review when the Rule was designated 56(f)), as we explain, no judge could have reasonably granted Mr. Nawaz's request.

Rule 56(d) "affords protection against the premature or improvident grant of summary judgment." *McAllister v. District of Columbia*, 653 A.2d 849, 852 (D.C. 1995) (explaining standard when rule was designated as Rule 56(f)). A court may deny a motion for summary judgment under Rule 56(d) if the party opposing the motion "adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Travelers*, 770 A.2d at 994. "[A] nonmovant can invoke this protection by filing an affidavit stating how discovery would enable him or her to effectively oppose the summary judgment motion." *McAllister*, 653 A.2d at 852. A party's request must be specific; "the party must demonstrate

precisely how additional discovery will lead to a genuine issue of material fact." *Travelers*, 770 A.2d at 994. To seek protection under the rule, a party must also "have been diligent in pursuing discovery before the summary judgment motion it is opposing was made." *Id.*

We cannot say on this record that Mr. Nawaz was "diligent in pursuing discovery" prior to his Rule 56(d) request. *Id.* Bloom Residential and the Trustee filed their complaint on March 5, 2021. Mr. Nawaz, voluntarily appearing without counsel, filed an answer and counterclaims on April 12, 2021. Mr. Nawaz sought no discovery after filing his answer and before Bloom Residential moved for summary judgment on May 24, 2021. Mr. Nawaz asserted in his opposition to Bloom Residential's motion for summary judgment that he should "be allowed to go through discovery," but he did not file a Rule 56(d) affidavit and did not explain that summary judgment was premature under the rule. Even after Mr. Nawaz hired a lawyer, he did not request discovery. Instead, Mr. Nawaz first argued that he was entitled to discovery under Rule 56(d) in his second motion opposing summary judgment to which he appended a Rule 56(d) affidavit. At this point, he argued that Bloom Residential's and the Trustee's motions "were filed prior to the entry of a scheduling order" and that counsel had only been "engaged approximately thirty (30) days ago." But, as we have previously explained, the absence of a scheduling order does not preclude a court from appropriately awarding summary judgment.

*Kibunja v. Alturas L.L.C.*, 856 A.2d 1120, 1125 (D.C. 2004). Neither did the timing of Mr. Nawaz's decision to retain counsel. *See id.* at 1124-25 (explaining that the month between when plaintiff filed for summary judgment and defendant opposed was sufficient time to seek discovery such that a denial of a discovery extension was not an abuse of discretion). Having failed to act diligently in pursuing discovery, Mr. Nawaz cannot invoke Rule 56(d) now to "relieve [his] lack of diligence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995).

In addition, Mr. Nawaz's discovery request under Rule 56(d) failed to explain with specificity what facts he needed to oppose summary judgment and why they were material to the legal claims at issue. *See Hollins v. Fed. Nat'l Mortg. Ass'n*, 760 A.2d 563, 577-78 (D.C. 2000) (rejecting additional discovery where requests were general or asked for information that was immaterial); *see also Travelers*, 770 A.2d at 994 (explaining that blanket statements that a nonmovant "requires additional information" are facially insufficient to meet Rule 56(d)'s standards).

While "the specific basis and explanation for the need for discovery . . . should ordinarily be set forth in the Rule 56[d] affidavit itself," we also consider the arguments in Mr. Nawaz's second motion in opposition to summary judgment that may have "alert[ed] the . . . court of the need for further discovery." *Id.* at 995-96 (internal quotation marks omitted). Even considering the arguments in Mr. Nawaz's opposition motion, his request for discovery falls short.

Mr. Nawaz first asserted that he needed discovery into the "tenants' occupancy status at the time of the Nawaz Contract," to determine whether the tenants occupied the property when they assigned their TOPA rights and whether the Trustee breached the provision of the Nawaz contract requiring the seller to get the buyer's consent before "modify[ing] the terms of or terminat[ing] . . . [the property's] tenanc[ies]." But whether the tenants physically occupied the property when they assigned their rights is legally irrelevant; a "tenant" with rights under TOPA is a person "*entitled* to the possession, occupancy or benefits of a rental unit," regardless of whether they physically occupy the premises. D.C. Code § 42-3401.03(17) (emphasis added). And we disagree that the Trustee breached the Nawaz contract by complying with TOPA and permitting the tenants to exercise their rights thereunder.

Second, Mr. Nawaz claimed that he needed discovery into "the dates and other details surrounding the tenants' purported assignment of TOPA Rights to the Trustee and Bloom." But Bloom Residential had already attached the Unit #1 tenants' assignment of their TOPA rights as an exhibit to its motion for summary judgment and the Trustee later provided Mr. Nawaz with the Unit #2 and #4 assignments. While Mr. Nawaz continues to argue that he "should be entitled to verify that the assignments are effective under TOPA," he has not explained what more he could be seeking that would create a genuine issue of material fact.

Third, Mr. Nawaz claimed that he needed discovery into "the Trustee's communications with third parties such as the Settlement agent," to investigate whether the Trustee contacted the Settlement Agent, as required under the Nawaz contract. But, as explained above, whether the Trustee contacted the Settlement Agent within the timeframe required by the Nawaz contract has no material impact on whether Bloom Residential and the Trustee are entitled to a declaratory judgment that their contract holds priority. Because Mr. Nawaz did not show that the discovery he sought would "lead to a genuine issue of material fact," *Travelers*, 770 A.2d at 994, and was not diligent in pursuing discovery prior to his Rule 56(d) request, he was not entitled to additional time for discovery under Rule 56(d).

Having concluded (1) the Bloom Residential contract held priority under TOPA, (2) Mr. Nawaz may not challenge the contract as expired, and (3) Mr. Nawaz was not entitled to additional discovery under Rule 56(d), we uphold the Superior Court's grant of summary judgment on Bloom Residential's and the Trustee's claim for a declaratory judgment that their contract holds priority and the Trustee may perform free and clear of any obligation under the Nawaz contract.

**B.** **Summary Judgment on the Trustee's Claim that Mr. Nawaz Tortiously Interfered with the Bloom Residential Contract**

In addition to requesting a declaratory judgment, the Trustee also moved for summary judgment on his claim that Mr. Nawaz tortiously interfered with the Bloom

Residential contract. The Superior Court did not separately analyze the tortious interference claim; nevertheless, it granted the Trustee's motion for summary judgment in full. Although we question whether the Trustee established that there was no material dispute of fact that he had been damaged by Mr. Nawaz's actions—in his summary judgment motion the only support the Trustee provided for his claim of damage was a paragraph in the complaint that references only future "potential damages," *see Cormier v. D.C. Water & Sewer Auth.*, 959 A.2d 658, 667 (D.C. 2008) (explaining that a party alleging damages must demonstrate that damages "exist and are not entirely speculative")—Mr. Nawaz has never identified damages as a contested issue of fact precluding summary judgment as to tortious interference. The only argument regarding the tortious interference claim he made in his brief is that it fails because the Trustee, by complying with TOPA, breached the Nawaz contract, an argument we have rejected above. *See* II.A.3. *supra*. In our adversarial system we rely on parties, particularly when they are represented by counsel, to preserve the arguments that may bring them relief and press them on appeal. *See, e.g.*, *Oparaugo v. Watts*, 884 A.2d 63, 75 (D.C. 2005) (explaining that "[p]oints not raised and preserved in the trial court [generally] will not be considered on appeal"); *Rose v. United States*, 629 A.2d 526, 536-37 (D.C. 1993) ("It is a basic principle of appellate jurisprudence that points not urged on appeal are deemed to be waived."). Accordingly, we affirm the Superior Court's grant of summary judgment to the

Trustee on its claim of tortious interference.

### C. Attorney's Fees and Costs

In addition to challenging the award of summary judgment, Mr. Nawaz contests the Superior Court's order awarding Bloom Residential and the Trustee attorney's fees and costs under D.C. Code § 42-3405.03. We review the Superior Court's decision to award attorney's fees and costs for abuse of discretion and, discerning none, affirm. *Vining v. District of Columbia*, 198 A.3d 738, 745 (D.C. 2018).

"In general, parties before the District's courts are responsible for paying the costs and fees that their own attorneys incur during the course of litigation, a practice known as the 'American rule.'" *Yeh v. Hnath*, 294 A.3d 1081, 1087 (D.C. 2023). TOPA, however, creates an exception to the American Rule. *See Psaromatis*, 944 A.2d at 490 (explaining that the American Rule ordinarily applies unless certain exceptions, such as a statute, dictate otherwise). Under D.C. Code § 42-3405.03, any "aggrieved owner [or] tenant . . . may seek enforcement of any right or provision under [TOPA] . . . and, upon prevailing, may seek an award of costs and reasonable attorney['s] fees."

Mr. Nawaz challenges the Superior Court's decision to award fees and costs to Bloom Residential and the Trustee as prevailing parties under D.C. Code § 42-3405.03 because the case involved "novel and difficult questions" of law. But

even if we were convinced this were the case, novelty is not a reason to deny a fee award to a prevailing party. *See Khan v. Orbis Bus. Intel. Ltd*., 292 A.3d 244, 263 (D.C. 2023) (explaining that a fee request's novel legal basis "did not make the award unjust"). Rather, a prevailing party who seeks reasonable fees and costs under TOPA is entitled to them. D.C. Code § 42-3405.03. On this basis, and in the absence of any challenge by Mr. Nawaz as to the reasonableness of the fees and costs requested, we uphold the award of fees and costs to Bloom Residential and the Trustee.

### D.     Security for the Trustee's Costs

Lastly, Mr. Nawaz appeals the Superior Court's decision ordering Mr. Nawaz to post security for the Trustee's costs under D.C. Code § 15-703(a) and, when Mr. Nawaz did not pay, issuing sanctions against him in the form of a judgment with interest accruing. D.C. Code § 15-703(a) provides that a "defendant *in a suit instituted by a nonresident* of the District of Columbia . . . may require the plaintiff to give security for costs and charges that may be adjudged against him on the final disposition of the cause." (emphasis added). Mr. Nawaz challenges the sanction by arguing that D.C. Code § 15-703(a) did not provide a statutory basis for the court's order that he post security for costs because it does not extend to counterclaimants.

While we normally review a motion to grant sanctions for abuse of discretion, *Woodroof v. Cunningham*, 147 A.3d 777, 790 (D.C. 2016), whether D.C. Code

§ 15-703(a) supports the Superior Court's order that Mr. Nawaz post security for costs is a legal question that we review de novo. *Cf. Montgomery v. Jimmy's Tire & Auto Ctr., Inc.*, 566 A.2d 1025, 1029 (D.C. 1989). To interpret the statute, "we first look to see whether the statutory language at issue is plain and admits of no more than one meaning." *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020) (brackets and internal quotation marks omitted). The statute specifies that it applies to "*suit[s] instituted* by a nonresident of the District of Columbia." D.C. Code § 15-703(a) (emphasis added). "Institute" commonly means "[t]o begin or start" or to "commence." Black's Law Dictionary (11th ed. 2019). While an initial plaintiff "institute[s]" legal proceedings against a defendant, a defendant bringing compulsory counterclaims under Super. Ct. Civ. R. 13(a), of the kind at issue here, does not commence "a suit" but merely responds to the initial action, as he must, to preserve claims that arise out of the same "transaction or occurrence." *See* Super. Ct. Civ. R. 13(a)(1)(A). The statute's plain language thus indicates D.C. Code § 15-703(a) does not apply to counterclaim plaintiffs. *See also Dunlap v. Dunlap*, 34 A.D. 2d 890, 890 (N.Y. App. Div. 1970) (concluding similar New York statute did not apply to counterclaimants).

Our analysis of the plain text is bolstered by our judgment that applying D.C. Code § 15-703(a) to counterclaimants would create unreasonable outcomes not supported by the statute's purpose. *See Williams v. Kennedy*, 211 A.3d 1108, 1110

(D.C. 2019) (explaining that to interpret a statute, we consider "evident legislative purpose"). When an out-of-state plaintiff chooses the District as a forum, they ordinarily assent to the procedural rights and consequences that accompany that choice. *See, e.g.*, *Parker v. K & L Gates, LLP*, 76 A.3d 859, 869-70 (D.C. 2013) (explaining that under "choice-of-law rules, procedures of the forum normally apply"). One such consequence is the potential that a non-resident plaintiff will be required to post security for costs. D.C. Code § 15-703(a). If a plaintiff wishes to avoid that possibility, they may consider bringing their suit elsewhere. Counterclaimants, on the other hand do not have that choice; a counterclaimant must bring any claims related to the underlying action in the forum that the plaintiff has already chosen. *See* Super. Ct. Civ. R. 13(a)(1). If D.C. Code § 15-703(a) were applied to counterclaimants, their only option to avoid being required to post security for costs would be to not bring their counterclaims at all. And while D.C. Code § 15-703(a)'s aim is to "discourage non-meritorious suits by nonresidents and to avoid a situation in which a successful defendant, usually a District resident, is compelled to file suit in a foreign jurisdiction in order to collect costs awarded him here," *Landise v. Mauro*, 141 A.3d 1067, 1076 (D.C. 2016) (internal quotation marks omitted), disincentivizing all counterclaims is a step too far. Considering the statute's plain language and purpose, we conclude that D.C. Code § 15-703(a) does not support requiring Mr. Nawaz to post security for costs and vacate the Superior

Court's order issuing sanctions for Mr. Nawaz's failure to pay.

### III. Conclusion

For the foregoing reasons, we affirm the Superior Court's award of summary judgment to Bloom Residential and the Trustee and affirm the Superior Court's order granting both parties' attorney's fees and costs. We vacate, however, the Superior Court's order sanctioning Mr. Nawaz for failure to post security for the Trustee's costs.

*So ordered.*